UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL HOUSING FINANCE AGENCY,
AS CONSERVATOR FOR THE FEDERAL
NATIONAL MORTGAGE ASSOCIATION
AND THE FEDERAL HOME LOAN
MORTGAGE CORPORATION,

                    Plaintiff,

           -v-

UBS AMERICAS, INC., *et al*.

                  Defendants.

**Case No. 11 CIV. 5201 (DLC)**

**DEFENDANTS' REPORT
REGARDING CERTAIN CASE
MANAGEMENT ISSUES**

---

Other Cases Brought By This Plaintiff:

11 Civ. 6188 (DLC)
11 Civ. 6189 (DLC)
11 Civ. 6190 (DLC)
11 Civ. 6192 (DLC)
11 Civ. 6193 (DLC)
11 Civ. 6195 (DLC)
11 Civ. 6196 (DLC)
11 Civ. 6198 (DLC)
11 Civ. 6200 (DLC)
11 Civ. 6201 (DLC)
11 Civ. 6202 (DLC)
11 Civ. 6203 (DLC)
11 Civ. 6739 (DLC)
11 Civ. 6916 (DLC)
11 Civ. 7010 (DLC)
11 Civ. 7048 (DLC)

---

      This submission sets forth proposals made by the Defendants in the seventeen above-captioned cases (the "Cases") on certain subjects on which the Court has directed the parties to submit a report:  "the sequencing of discovery, protective orders, e-discovery, the sampling of loan files, limits on depositions, and the timeframes regarding document production, depositions, and expert discovery."  *Federal Housing Finance Agency* v. *UBS Americas, Inc.*, No. 11 Civ.

5201 (DLC) (S.D.N.Y. Dec. 5, 2011).[1]  Counsel for Plaintiff and counsel for the undersigned

Defendants have met and conferred and are submitting today a Joint Report (the "Joint Report")

on these topics.  The Joint Report reflects substantial agreement, or substantial progress toward

agreement, on many points, including on a protective order, a protocol for production of

electronically-stored information, a need for prioritized production of certain documents, and

basic principles governing discovery.  Defendants submit this separate report to explain why

further agreement could not be reached at this time, but could be reached in due course, well

before this Court would be called upon to rule on such open issues.[2]  Further, Defendants submit

that many of the issues about which the parties differ may be more readily resolved at a later

point in the litigation process, when the parties have more information on the scope of any ruling

on the motion to dismiss, the remaining issues for litigation, and the exchange of certain

information typically included in initial disclosures.  In the event that the Court prefers to rule

now, Defendants submit that the ruling should reflect Defendants' proposed approach to the

disputed items, for the reasons set out below.

---

[1]  Defendants include 17 groups of separately represented institutional defendants plus 129 individual defendants, all of whom have significant, and not necessarily identical, interests in these subjects.

[2]  As the Joint Report reflects, the parties made substantial progress (including over the holidays) on many issues, as well as drafting, commenting on and negotiating a stipulated protective order and a protocol for electronically stored information.  Based on that progress, the parties expect by month's end to have reached agreement or identified limited areas of disagreement on the many difficult questions those documents address.  Defendants have approached these negotiations in good faith, with diligence, and without delay.  Based on Plaintiff's election to amend its pleading in the action against the UBS Defendants, 11 Civ. 5201 ("the 5201 Action"), there is now a longer briefing schedule for the UBS Defendants' motion to dismiss, pushing until late February the earliest date by which the Court could decide that motion and, should any claim survive, lift the discovery stay previously put in place during its pendency.

I.                **PROTECTIVE ORDER**

        As reflected in the Joint Report, the parties will continue to meet and confer regarding an appropriate protective order until January 23, 2012, and expect to be able to reach agreement on all or part of a proposed protective order by that time.

II.               **ELECTRONIC DISCOVERY**

        As reflected in the Joint Report, the parties expect to reach agreement on a stipulation governing electronic discovery by January 18, 2012.

III.             **LIMITS ON DEPOSITIONS AND INTERROGATORIES**

        The Joint Report reflects the parties' agreement that there should be numerical limits on both the number of depositions (or deposition days) allowed and the amount of time particular witnesses will be deposed.  The parties also agree that, in general, witnesses should be deposed only once, and that a deposition protocol should be developed through further discussions among the parties in order to address in detail, among other things, the number of lawyers examining or objecting, the form and effect of objections, notice, scheduling, exhibits, location, transcription, costs and allocations of time.

        However, Defendants submit, and Plaintiff disagrees, that: (i) the precise number of depositions (or deposition days) to be taken in these Cases should be identified after the parties exchange further information that will better enable them to accurately estimate that number; (ii) the number of depositions (or deposition days) should presumptively be allocated equally between Plaintiff (50%) and Defendants (50%), rather than on the lopsided basis Plaintiff has proposed; (iii) document discovery should be completed 12 (rather than nine) months after the commencement of discovery; and (iv) fact depositions should be completed 12 months after the completion of document discovery (rather than 15 months after the commencement of

document discovery, as Plaintiff proposes, which would leave little time for depositions following completion of document productions).

**Numbers of Depositions**—Defendants object to Plaintiff's proposal to fix the number of depositions (or deposition days) at this time, prior to conducting any discovery whatsoever. The numbers Plaintiff has proposed—approximately 340 depositions to be taken by Plaintiff alone and approximately 40 depositions to be taken by more than 200 Defendants together—are arbitrary, contrary to the Federal Rules of Civil Procedure and the Court's Local Civil Rules, and would deprive Defendants of the opportunity to conduct full and fair discovery to defend themselves. At this early stage, Plaintiff has provided no information to suggest that the relevant knowledge and responsibility of the two GSEs', FHFA's or OFHEO's personnel with respect to the 535 Securitizations at issue is confined to a mere 20 Fannie Mae or 20 Freddie Mac employees or former employees.[3] Publicly available information suggests otherwise: (i) each of the GSEs employed thousands of people during the relevant time period; (ii) the number of persons employed in potentially responsible areas, such as risk management, reportedly increased throughout the time period; and (iii) these expanding ranks had expanding responsibility for a $1 trillion portfolio. *See*, *e.g.*, Fannie Mae, Annual Report (Form 10-K) (Aug. 16, 2007); Freddie Mac, Annual Report (Feb. 28, 2008). It seems unlikely that information relevant to the 535 Securitizations, let alone the policies, practices, and procedures at the GSEs, resides with just 20 people at each GSE and that neither Plaintiff, as the GSEs' regulator, nor OFHEO, FHFA's predecessor, has information relevant to the GSEs' securitization practices, or their awareness of risks and materializations of risk. It also seems unlikely that the institutional wrongdoing recently charged by the Securities and Exchange

---

[3] Plaintiff has failed entirely to account for any depositions of FHFA or OFHEO, Fannie and Freddie's current and former regulator, respectively.

Commission and acknowledged by the GSEs with respect to their RMBS practices was known to no more than 20 people at each GSE.

An orderly exchange of further information will provide the parties and the Court with a basis on which to estimate the number of GSE employees and former employees with relevant knowledge concerning the Securitizations, the GSEs' policies, practices, and procedures, and other relevant information.

In addition, there is no reasonable basis on which to predict at this point the likely needs of the parties with respect to the number and length of non-party depositions, although it is clear that third party discovery of originators, servicers, due diligence firms, appraisers and credit ratings agencies will be significant.

**Shares of Deposition Time**—Defendants believe, and Plaintiff disagrees, that the number of depositions (or deposition days) should presumptively be divided, as in any other case, evenly between Plaintiff and Defendants.  Defendants' proposal reflects the sort of parity that the Federal Rules of Civil Procedure consistently endorse in discovery, including with respect to both depositions and interrogatories.  Fed. R. Civ. P. 30(a)(2); Fed. R. Civ. P. 33(a)(1).

Plaintiff's proposal to afford Defendants approximately one-eighth of the deposition time would place Defendants at a severe disadvantage, significantly prejudice Defendants' ability to defend these cases, and would disserve the Court's and all parties' interest in fairly adjudicating cases on a reliable record.  If Plaintiff estimates that it needs hundreds of depositions (or deposition days) to explore the risks associated with the GSEs' accumulation of a multi-trillion dollar portfolio of RMBS, Defendants should be afforded comparable time to explore what the GSEs knew about those risks, how the GSEs contributed to them, why FHFA as the GSEs' successor regulator took so long to make any claim, and the other issues in these Cases.

FHFA may argue that the number of Defendants justifies an unequal division of depositions.  However, it was FHFA that chose to sue all the Defendants at the same time in 17 separate actions.  Moreover, FHFA's litigation choices should not prejudice the right of each Defendant to conduct discovery necessary to defend its Case.  In any event, Defendants' proposal specifically addresses any disparity (if there is one) in the potential number of party witnesses by calling for balance in the total amount of deposition days.  Under this approach, even if a small number of witnesses were responsible for FHFA's investment in all the Securitizations, each Defendant would have a right to depose that witness about (for example) his specific knowledge about each Securitization.  Multiplied over many Defendants, such a deposition could take considerably longer than a single deposition of one of Defendants' witnesses.

Defendants are mindful of the potential for overlap among the Cases but cannot know the extent that such overlap exists until they have seen what Plaintiff reveals about how the GSEs structured their business and deployed their employees.  Where appropriate, Defendants will coordinate deposition questioning to promote efficiency.  However, the Cases involve a total of 535 securitizations involving distinct assets, separate offering materials, distinct time periods and differing combinations of Defendants and non-parties.  Defendants in each Case are entitled to defend themselves, with fair and adequate discovery, including depositions.  Defendants respectfully submit that any concern about duplicate or unnecessary depositions can be addressed, when and if the circumstances arise, through appropriately fashioned agreements or orders.

The parties and the Court also will be in a better position to make an informed assessment of deposition needs on a case-by-case basis once document and other discovery has progressed.

Specifically, in connection with the Rule 26(f) conference, the parties will have developed an appropriate discovery plan, addressing the items enumerated in Rule 26(f)(3). Defendants are certainly willing to be flexible in specific allocation of time as a deposition calendar takes shape, but at this early stage there should be no presumption of inequality.

Accordingly, Defendants propose that based on further exchanges of information in connection with the Rule 26(f) conference and otherwise, the parties should meet and confer to attempt to agree on a total number of depositions (or deposition days) across all Cases, to be shared evenly between Plaintiff and Defendants. This proposed method of proceeding will entail no delay in scheduling, as the parties have agreed in the Joint Report that substantive depositions on the merits should begin only after substantial completion of document production.

**Interrogatories**—The parties' disagreement over the number of interrogatories to be allowed mirrors their disagreement over depositions. Here, Plaintiff proposes that it be allowed 50 interrogatories per Case, for a total of 850 interrogatories, while all Defendants together are allowed just 50 interrogatories. As discussed above, this severe imbalance would be unfair and inconsistent with the Federal Rules and would constitute a significant deprivation of rights.

**IV.        SEQUENCING OF DISCOVERY**

The Joint Report sets out the parties' descriptions of the categories of discovery that they intend to prioritize, as well as the parties' general agreement on the order of discovery. The parties disagree, however, on the appropriate timing for exchanging lists of document custodians and search terms for identification and production of responsive, non-privileged documents. Defendants submit that this exchange should occur, as it typically does in litigation, in connection with the ordinary discovery process, based on discussions among parties regarding the scope of discovery requests and responses. Defendants propose to include the start of these discussions among those that ordinarily and necessarily precede the Rule 26(f) conference that

the parties have agreed should occur within 14 days of the Court's ruling on the dismissal motion in the 5201 Action.

By contrast, Plaintiff's proposal would require exchange of these lists prior to the Court's ruling on the impending dismissal motion in the 5201 Action.  This exchange would be premature because the Court's ruling on that motion could obviate, or at a minimum help focus, discovery in the Cases.[4]  Rather than contribute to the efficient conduct of this litigation, Plaintiff's proposal would almost certainly result in uninformed, unnecessary efforts to predict the parameters of appropriate discovery.

## V.        PRETRIAL SCHEDULE

**Discovery Stay**—The parties agree that this Court has stayed discovery in all Cases pending a decision on the motion to dismiss in the 5201 Action.  The parties further agree that, at the December 2, 2011 initial case management conference ("Conference"), the Court expressed a presumption as of that time that, if the bulk of the complaint in the 5201 Action survives, document discovery will begin in all cases, subject to an application by any particular defendant for a continued stay.  *See* Conference Tr. at 30:32-31:15  ("If it survives, I plan -- right now, I am going to be a lot wiser after I address this motion practice, but the presumption would be that discovery will go forward in all cases, at least document discovery and at least core document discovery, . ... the only exception I that I am thinking about now, and I will be much wiser after I have the full briefing on that first motion to dismiss, is whether or not if some other case has a terrific statute of limitations argument that has not been captured by the 5201 briefing, whether or not I should stay discovery in that particular action because of its unique statute of limitations

---

[4]  Plaintiff has made an "offer" to serve document requests now, prior to the Court's decision on the dismissal motion.  This would not fix the fundamental problems identified above but rather would increase costs and waste.

argument.")  The parties agree that any Defendants that believe that a stay is appropriate in any Case pending resolution of any individual motions to dismiss shall have 14 days following the release of the decision on the dismissal motion in the 5201 Action in which to file a motion with the Court.  The parties disagree, however, as to the pendency of the stay during additional motion practice.  Defendants believe that, absent a direction by the Court to the contrary, the stay of discovery would remain in place for moving Defendants during the pendency of their motions, while Plaintiff asserts that no stay would be in place after the decision on the dismissal motion in the 5201 Action absent further order of the Court.  Defendants respectfully submit that a determination of whether to lift the discovery stay in any or all of the Cases and as to any or all of the parties should be made after the Court has had an opportunity to consider, and rule on, the submissions relating to the dismissal motion in the 5201 Action and the implications of that decision for any further dismissal motions in the Cases.  Plaintiff's position that the stay should automatically evaporate unless the dismissal motion in the 5201 Action is granted in full, subject to reinstatement on application of any Defendant, would subject Defendants to potentially needless, or at least premature, discovery pending a ruling on such a reinstatement application.  Moreover, because Defendants propose to file any further motion for a stay within just 14 days following the UBS decision, discovery would not be delayed significantly by affording the Court time to consider whether discovery is or should be stayed.

**Document Production**—Plaintiff has proposed nine months for completion of document production; Defendants propose 12 months.  Defendants believe this additional time is needed given the breadth of the Cases, the number of Securitizations at issue in each case, the number of Defendants, including individual defendants, in each Case, and the number of relevant non-parties, including originators, servicers, credit ratings agencies, appraisal firms and due diligence

firms, that will likely to be called upon to produce documents.  Many potentially pertinent documents are not electronically maintained, have not been previously collected and may not be readily located.  Defendants believe that this would be an aggressive schedule, given the volume of potential documents.

**Depositions**—Plaintiff has proposed a 15-month deposition period starting from *before* document discovery begins, upon the provision of initial disclosures; Defendants propose a twelve-month period measured from the close of document discovery.  As reflected in the Joint Report, and as is general practice, depositions generally are taken after documents have been produced.  This practice reflects the fact that depositions conducted before document production are inefficient, yield less complete discovery, and often give rise to requests to continue or re-open the deposition in light of documents produced.  Having proposed 9 months for document discovery, Plaintiff's proposal would leave no more than 6 months in which to conduct depositions once document discovery is complete.  Plaintiff suggests that it alone needs to take several hundred depositions,  while Defendants' discovery needs and includes a significant number of non-Party depositions of, among others, current and former employees of the originators of the loans, the firms hired to conduct due diligence on the loans, credit ratings agencies, as well as depositions of appraisers, servicers and confidential witnesses.  Given the anticipated need to subpoena and examine so many parties and non-parties, Defendants

reasonably project a 15-month deposition period to commence at the close of document discovery.[5].

**Trial Depositions**—The parties also were unable to reach agreement on a short period to allow the parties to take *de bene esse* or trial preservation depositions for unavailable witnesses.  As the Report on the SDNY complex litigation pilot program recognizes, the efficient presentation of evidence at trial is advanced by allowing for depositions of witnesses identified in a party's witness list or pretrial order who are unavailable for trial.

**VI.        USE OF STATISTICAL SAMPLING**

          Defendants disagree with Plaintiff that the potential use of statistical sampling "as a method of proof" at trial can or should be resolved at this time.  Despite several requests, Plaintiff has declined to describe what it proposes concerning sampling.  Instead, it has called for Defendants to agree "in general" that "there can be statistical sampling."  Defendants anticipate that the issue of sampling as a method of proof, if Plaintiff elects to proceed in this manner, will be the subject of expert reports and testimony.  The Joint Report sets forth a proposed schedule for those events.  If sampling is used, it presumably will be the subject of expert reports and testimony, and its use at trial is properly considered only after fact and expert discovery. Determination of sampling in the abstract as a method of proof at trial is thus premature at this stage in the proceedings.  Plaintiff has articulated no reason for the Court to decide at the start of litigation how sampling may be used at trial or otherwise issue rulings about evidence at trial.

---

[5]  Defendants do not rule out the possibility that a small number of depositions may proceed during document discovery, as reflected in the Joint Report.  Nonetheless, given the number of anticipated deponents, the volume of material already deemed a priority, and the number of Party and non-Party employees whose depositions will depend on a wide range of documents, Plaintiff's proposal would result in a severe compression of depositions into an unmanageable time period.

\*        \*        \*

Defendants are available at the Court's convenience to further discuss this proposal or the

Joint Report.

Dated: January 10, 2012
          New York, New York

Respectfully submitted,

/s/ Thomas C. Rice_____

Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw com)
Alan C. Turner (aturner@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017-3954

*Attorneys for Defendants Deutsche Bank AG,*
*Taunus Corporation, Deutsche Bank Securities*
*Inc , DB Structured Products, Inc., Ace*
*Securities Corp., Mortgage IT Securities Corp.*

/s/ Jay B. Kasner_____

Jay B. Kasner (jay.kasner@skadden.com)
Scott Musoff (scott.musoff@skadden.com)
Robert A. Fumerton (robert.fumerton@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, NY  10036

*Attorneys for Defendants UBS Americas Inc.,*
*UBS Real Estate Securities Inc., UBS Securities*
*LLC, Mortgage Asset Securitization*
*Transactions, Inc., David Martin, Per Dyrvik,*
*Hugh Corcoran and Peter Slagowitz*

/s/ Richard A. Spehr_____

Richard A. Spehr (rspehr@mayerbrown.com)
Michael O. Ware (mware@mayerbrown.com)
MAYER BROWN LLP
1675 Broadway
New York, NY  10019

*Attorneys for Defendants HSBC North America*
*Holdings Inc., HSBC USA Inc., HSBC Markets*
*(USA) Inc., HSBC Bank USA, NA., HSI Asset*
*Securitization Corporation*

/s/ Brad. S. Karp_____

Brad S. Karp (bkarp@paulweiss.com)
Susanna M. Buergel (sbuergel@paulweiss.com)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064

*Attorneys for Citigroup Inc., Citigroup*
*Mortgage Loan Trust Inc., Citigroup Global*
*Markets Realty Corp., Citigroup Global*
*Markets Inc.*

/s/ James R. Rouhandeh
James R. Rouhandeh
Brian S. Weinstein
Daniel J. Schwartz
Nicholas N. George
Jane M. Morril
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017

*Attorneys for Defendants Morgan Stanley,
Morgan Stanley & Co. Incorporated (n/k/a
Morgan Stanley & Co. LLC), Morgan Stanley
Mortgage Capital Holdings LLC (successor-in-
interest to Morgan Stanley Mortgage Capital
Inc.), Morgan Stanley ABS Capital I Inc.,
Morgan Stanley Capital I Inc., Saxon Capital,
Inc., Saxon Funding Management LLC, Saxon
Asset Securities Company, Gail P. McDonnell,
Howard Hubler, Craig S. Phillips, Alexander C.
Frank, David R. Warren, John E. Westerfield,
and Steven S. Stern*

/s/ Bruce. E. Clark
Bruce E. Clark (clarkb@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004

Amanda F. Davidoff (davidoffa@sullcrom.com)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006

*Attorneys for Defendants First Horizon
National Corporation, First Tennessee Bank
National Association, FTN Financial Securities
Corporation, First Horizon Asset Securities,
Inc.*

/s/ Penny Shane
Penny Shane (shanep@sullcrom.com)
Sharon L. Nelles (nelless@sullcrom.com)
Jonathan M. Sedlak (sedlakj@sullcrom.com)
David A. Castleman (castlemand@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004

*Attorneys for Defendants JPMorgan Chase &
Co., JPMorgan Chase Bank, N.A., J.P. Morgan
Mortgage Acquisition Corporation, J.P.
Morgan Securities LLC, J.P. Morgan
Acceptance Corporation I, Bear Stearns & Co.,
Inc., EMC Mortgage LLC, Structured Asset
Mortgage Investments II Inc., Bear Stearns
Asset Backed Securities I LLC, WaMu Asset
Acceptance Corporation, WaMu Capital
Corporation, Washington Mutual Mortgage
Securities Corporation, Long Beach Securities
Corporation and certain of the Individual
Defendants*

/s/ David H. Braff
David H. Braff (braffd@sullcrom.com)
Brian T. Frawley (frawleyb@sullcrom.com)
Jeffrey T. Scott (scottj@sullcrom.com)
Joshua Fritsch (fritschj@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004

*Attorneys for Barclays Capital Inc. Barclays
Bank PLC, Securitized Asset Backed
Receivables LLC, Paul Menefee, John Carroll,
and Michael Wade*

/s/ David Blatt

David Blatt (dblatt@wc.com)
John McNichols (jmcnichols@wc.com)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005

*Attorneys for Bank of America Corporation;*
*Bank of America, N.A.; Asset Backed Funding*
*Corp.; Banc of America Funding Corp.; Merrill*
*Lynch & Co., Inc., Merrill Lynch Mortgage*
*Lending, Inc., Merrill Lynch Mortgage Capital*
*Inc., First Franklin Financial Corp., Merrill*
*Lynch Mortgage Investors, Inc., Merrill Lynch*
*Government Securities, Inc., Merrill Lynch,*
*Pierce, Fenner & Smith Inc.*

/s/ Richard W. Clary

Richard W. Clary (rclary@cravath.com)
Michael T. Reynolds (mreynolds@cravath.com)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019

*Attorneys for Credit Suisse Securities (USA),*
*Credit Suisse Holdings (USA), Inc., Credit*
*Suisse (USA), Inc., DLJ Mortgage Capital, Inc.,*
*Credit Suisse First Boston Mortgage Securities*
*Corporation, Asset Backed Securities*
*Corporation, Credit Suisse First Boston*
*Mortgage Acceptance Corporation, Andrew A.*
*Kimura, Jeffrey A. Altabef, Eveleyn Echevarria,*
*Michael A. Marriott, Zev Kindler, John P.*
*Graham, Thomas E. Siegler, Thomas Zingalli,*
*Carlos Onis, Steven L. Kantor, Joseph M.*
*Donovan, Juliana Johnson, and Greg Richter*

/s/ Richard H. Klapper

Richard H. Klapper (klapperr@sullcrom.com)
Theodore Edelman (edelmant@sullcrom.com)
Michael T. Tomaino, Jr. (tomainom@sullcrom.com)
Jordan T. Razza (razzaj@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

*Attorneys for Goldman, Sachs & Co, GS*
*Mortgage Securities Corp., Goldman Sachs*
*Mortgage Company, The Goldman Sachs*
*Group, Inc., Goldman Sachs Real Estate*
*Funding Corp., Peter C. Aberg, Howard S.*
*Altarescu, Robert J. Christie, Kevin Gasvoda,*
*Michelle Gill, David J. Rosenblum, Jonathan S.*
*Sobel, Daniel L. Sparks, and Mark Weiss*

/s/ Bruce E. Clark

Bruce E. Clark (clarkb@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

Amanda F. Davidoff (davidoffa@sullcrom.com)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC  20006

*Attorneys for Defendants Nomura Securities*
*International, Inc., Nomura Holding America*
*Inc., Nomura Asset Acceptance Corporation,*
*Nomura Home Equity Loan, Inc., Nomura*
*Credit & Capital, Inc.*

/s/ Jay B. Kasner
Jay B. Kasner (jay.kasner@skadden.com)
Scott Musoff (scott.musoff@skadden.com)
George Zimmerman (george.zimmerman@skadden.com)
Robert A. Fumerton (robert.fumerton@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, NY  10036

*Attorneys for SG Americas, Inc., SG Americas
Securities Holdings, LLC, SG Americas
Securities, LLC, SG Mortgage Finance Corp.,
and SG Mortgage Securities, LLC, Arnaud
Denis, Abner Figueroa, Tony Tusi, and Orlando
Figueroa*

/s/ Greg A. Danilow
Greg A. Danilow (greg.danilow@weil.com)
Vernon Broderick (vernon.broderick@weil.com)
WEIL, GOTSHAL, & MANGES LLP
767 Fifth Avenue, 25th Fl.
New York, NY  10153

*Attorneys for General Electric Company,
General Electric Capital Services, Inc., GE
Mortgage Holding, LLC, GE-WMC Securities,
LLC*

/s/ Mark Holland
Mark Holland
(mholland@goodwinprocter.com)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Tel. (212) 813-8800

Brian E. Pastuszenski
(bpastuszenski@goodwinprocter.com)
Don M. Kennedy
(dkennedy@goodwinprocter.com)
John J. Falvey (jfalvey@goodwinprocter.com)
John B. Daukas (jdaukas@goodwinprocter.com)
GOODWIN PROCTER LLP
53 State Street
Boston, MA 02110
Tel. (617) 570-1000

*Attorneys for Countrywide Financial
Corporation, Countrywide Home Loans, Inc.,
Countrywide Capital Markets, LLC,
Countrywide Securities Corporation, CWALT,
Inc., CWABS, Inc., CWMBS, Inc. and N. Joshua
Adler*

/s/ Sandra D. Hauser
Sandra D. Hauser
(sandra.hauser@ snrdenton.com)
SNR DENTON US LLP
1221 Avenue of the Americas
New York, New York 10020

*Attorneys for Matthew Perkins, Craig Davis,
Megan Davidson and Marangal Domingo*

16

/s/ Richard A. Spehr
Richard A. Spehr (rspehr@mayerbrown.com)
Michael O. Ware (mware@mayerbrown.com)
MAYER BROWN LLP
1675 Broadway
New York, NY  10019

*Attorneys for Ally Financial Inc., GMAC
Mortgage Group, Inc., Residential Capital LLC,
GMAC-RFC Holding Company, LLC,
Residential Funding Company, LLC, Ally
Securities, LLC, Residential Asset Mortgage
Products, Inc., Residential Asset Securities
Corporation, and Residential Accredit Loans,
Inc.*

/s/ Thomas C. Rice
Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Alan Turner (aturner@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017

*Attorneys for Defendant RBS Securities Inc.*

/s/ Daniel C. Zinman
Daniel C. Zinman (dzinman@rkollp.com)
Neil S. Binder (nbinder@rkollp.com)
RICHARDS KIBBE & ORBE LLP
One World Financial Center
New York, NY  10281

*Attorneys for George C. Carp, Robert Caruso,
George E. Ellison, Adam D. Glassner, Daniel B.
Goodwin, Juliana Johnson, Michael J. Kula,
William L. Maxwell, Mark I. Ryan, and Antoine
Schetritt; Matthew Whalen; Brian Sullivan;
Michael McGovern; Donald Puglisi; Paul Park,
and Donald Han*

/s/ Dani R. James
Dani R. James (djames@kramerlevin.com)
Jade A. Burns (jburns@kramerlevin.com)
KRAMER LEVIN NAFTALIS & FRANKEL
LLP
1177 Avenue of the Americas
New York, New York 10036

*Attorneys for Defendant Jeffrey L. Verschleiser*

/s/ Robert F. Serio
Robert F. Serio (RSerio@gibsondunn.com)
Aric H. Wu (AWu@gibsondunn.com)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166

*Attorneys for Citigroup Global Markets, Inc.,
Deutsche Bank Securities Inc., RBS Securities
Inc. and UBS Securities LLC*

/s/ Joel C. Haims
Joel C. Haims (jhaims@mofo.com)
LaShann M. DeArcy (ldearcy@mofo.com)
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104

*Attorneys for Tom Marano and Michael
Nierenberg*