```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
FEDERAL HOUSING FINANCE AGENCY, etc.,   :
                      Plaintiff,        :
              -v-                       :   11 Civ. 6739 (DLC)
                                        :
MORGAN STANLEY, et al.,                 :   OPINION & ORDER
                      Defendants.       :
                                        :
----------------------------------------X
```

APPEARANCES:
For Plaintiff Federal Housing Finance Agency:
Marc E. Kasowitz
Hector Torres
Christopher P. Johnson
Michael A. Hanin
Kanchana Wangkeo Leung
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019

For Morgan Stanley Defendants:
James P. Rouhandeh
Brian S. Weinstein
Daniel J. Schwartz
Nicholas N. George
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017

For Defendant Credit Suisse Securities (USA) LLC:
Richard W. Clary
Michael T. Reynolds
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, New York 10019

For Defendant RBS Securities Inc.:
Thomas C. Rice
David J. Woll
Alan Turner
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017

DENISE COTE, District Judge:

This is one of sixteen actions currently before this Court in which the Federal Housing Finance Agency ("FHFA" or "the Agency"), as conservator for Fannie Mae and Freddie Mac (together, the "Government Sponsored Enterprises" or "GSEs"), alleges misconduct on the part of the nation's largest financial institutions in connection with the offer and sale of certain mortgage-backed securities purchased by the GSEs in the period between 2005 and 2007.[1]  As amended, the complaints in each of the FHFA actions assert that the Offering Documents used to market and sell Residential Mortgage-Backed Securities ("RMBS") to the GSEs during the relevant period contained material misstatements or omissions with respect to the owner-occupancy

---

[1] The sixteen cases are: FHFA v. UBS Americas, Inc., et al., 11 Civ. 5201 (DLC); FHFA v. JPMorgan Chase & Co., et al., 11 Civ. 6188 (DLC); FHFA v. HSBC North America Holdings, Inc., et al., 11 Civ. 6189 (DLC); FHFA v. Barclays Bank PLC, et al., 11 Civ 6190 (DLC); FHFA v. Deutsche Bank AG, et al., 11 Civ. 6192 (DLC); FHFA v. First Horizon National Corp., et al., 11 Civ 6193 (DLC); FHFA v. Bank of America Corp., et al., 11 Civ. 6195 (DLC); FHFA v. Citigroup Inc., et al., 11 Civ. 6196 (DLC); FHFA v. Goldman, Sachs & Co., et al., 11 Civ. 6198 (DLC); FHFA v. Credit Suisse Holdings (USA), Inc., et al., 11 Civ. 6200 (DLC); FHFA v. Nomura Holding America, Inc., et al., 11 Civ. 6201 (DLC); FHFA v. Merrill Lynch & Co., Inc., et al., 11 Civ. 6202 (DLC); FHFA v. SG Americas, Inc., et al., 11 Civ. 6203 (DLC); FHFA v. Morgan Stanley, et al., 11 Civ. 6739 (DLC); FHFA v. Ally Financial Inc., et al., 11 Civ. 7010 (DLC); FHFA v. General Electric Co., et al, 11 Civ. 7048 (DLC).  The FHFA has also brought two similar actions, which are pending in federal courts in California and Connecticut.  See FHFA v. Countrywide Financial Corp., et al., No. 12 Civ. 1059 (MRP) (C.D. Cal.); FHFA v. Royal Bank of Scotland, No. 11 Civ. 1383 (AWT) (D. Conn).

status, loan-to-value ("LTV") ratio, and underwriting standards that characterized the underlying mortgages.  On the basis of these allegations, the complaints assert claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, l(a)(2), o; the Virginia Securities Act, VA Code Ann. § 13.1-522(A)(ii), (C); and the District of Columbia Securities Act, D.C. Code § 31-5606.05(a)(1)(B), (c).  In six of the cases, including this one, the Agency has also asserted common law claims of fraud and aiding and abetting fraud against certain entity defendants (the "Fraud Claim Cases").  As pleaded, these fraud claims attach to each of the three categories of misstatements upon which the plaintiff's securities law claims are based.[2]

The Court has already issued several Opinions addressing motions to dismiss in other cases brought by the FHFA.[3]

---

[2] As noted in previous Opinions, the plaintiff also pleads defendants' statements regarding the credit ratings of the Certificates as a separate category of misstatement under the Securities Act and, in the cases with fraud claims, fraudulent representation.  The plaintiff's claims in this respect are largely derivative of the three core representations described above.

[3] Federal Housing Finance Agency v. UBS Americas, Inc. et al., 858 F. Supp. 2d 306 (S.D.N.Y. 2012) ("UBS I"); Federal Housing Finance Agency v. UBS Americas, Inc., et al., No. 11 Civ. 5201 (DLC), 2012 WL 2400263 (S.D.N.Y. June 26, 2012) ("UBS II"); Federal Housing Finance Agency v. JPMorgan Chase & Co., et al., No. 11 Civ. 7188 (DLC), 2012 WL 5395646 (S.D.N.Y. Nov. 5, 2012) ("Chase"); FHFA v. Merrill Lynch & Co., et al., No. 11 Civ. 6202 (DLC), 2012 WL 5351188 (S.D.N.Y. Nov. 8, 2012) ("Merrill"); FHFA v. Deutsche Bank, et al., No. 11 Civ. 6192 (DLC), 2012 WL

Familiarity with those Opinions is assumed; all capitalized terms have the meanings previously assigned to them.

Following this Court's decision of the motion to dismiss in FHFA v. UBS, discovery began in all of the coordinated cases. Briefing of defendants' motions to dismiss in the remaining fifteen cases has occurred in two phases, with the motions in this case and the other Fraud Claim Cases becoming fully submitted on October 11, 2012. The motions in the remaining nine cases were fully submitted November 9, 2012. Depositions are to begin in all cases in January 2013, and all fact and expert discovery in this matter, 11 Civ. 6739 (DLC), must be concluded by December 6, 2013. Trial in this matter is scheduled to begin in January 2015 as part of the fourth tranche of trials in these coordinated actions.

## DISCUSSION

This case concerns RMBS Certificates allegedly purchased by the GSEs between September 2005 and October 2007. Each of the GSE Certificates pertains to one of 33 securitizations offered for sale pursuant to one of seven shelf-registration statements. The lead defendant is Morgan Stanley. Various corporate affiliates of Morgan Stanley and associated individuals are also

---

5471864 (S.D.N.Y. Nov. 12, 2012) ("Deutsche Bank"); FHFA v. Goldman Sachs & Co, et al., No. 11 Civ. 6198, 2012 WL 5494923 (S.D.N.Y. Nov. 12, 2012) ("Goldman"); FHFA v. Barclays Bank PLC, et al., No. 11 Civ. 6190 (DLC), slip op. (Nov. 19, 2012) ("Barclays").

defendants.  Morgan Stanley affiliates served as lead underwriter for 30 of the 33 securitizations at issue, as sponsor for 23 of them, and as depositor for 30.  Each individual defendant signed one or more of the Offering Documents.  For certain of the securitizations, the plaintiff also asserts securities law claims against RBS Securities Inc. ("RBS") and Credit Suisse Securities (USA) LLC ("Credit Suisse").  These banks acted as underwriters for certain of the securitizations but are not otherwise affiliated with Morgan Stanley.  The plaintiff's fraud claims are asserted only against the Morgan Stanley entity defendants.

Three motions to dismiss have been filed in this case: one on behalf of all of the Morgan Stanley defendants and affiliated individuals, one on behalf of Credit Suisse, and one on behalf of RBS.  The motions press a number of arguments that are also pressed by other defendants in these coordinated actions, some of which have been addressed by this Court's previous Opinions.  The Court hereby adopts by reference the reasoning and, to the extent they are relevant here, the rulings of those prior Opinions.[4]  All capitalized terms have the meanings previously assigned to them.

---

[4] As in other cases, the plaintiff has abandoned its Virginia Blue Sky claims with regard to securitizations it purchased before September 6, 2006.  Accordingly, these claims are dismissed.

5

I.   Adequacy of Fraud Allegations

As in other cases filed by this plaintiff, defendants' motion to dismiss devotes particular attention to the adequacy of the FHFA's allegations in support of its fraud claims.  To be sure, each of these coordinated actions must be considered on its own bottom.  The roles of these defendants in the RMBS securitization process and their familiarity with it differ from those of defendants in other cases in material respects.  The plaintiff's allegations in support of its fraud claims differ accordingly.  Nonetheless, an independent review of the plaintiff's allegations in this case compels an outcome similar to those this Court has reached in previous Opinions in this litigation.

As in <u>Chase</u>, the facts alleged in the Amended Complaint are sufficient to plead fraud with respect to the Offering Materials' representations regarding mortgage-underwriting standards.  In addition to the arguments considered and rejected in <u>Chase</u>, defendants argue that the plaintiff's scienter allegations are not credible because Morgan Stanley retained an interest in the securitizations that it sold to the GSEs and therefore had no motive to permit the securitization of deficient loans.  The plaintiff counters that Morgan Stanley's filings indicate it intended to re-securitize these residual interests and "unload [them] onto other unsuspecting parties."

Whatever the merit of these arguments, they turn on factual disputes that are inappropriate for resolution through a motion to dismiss.

With respect to the scienter component of FHFA's fraud claims based on LTV and owner-occupancy information, however, the Amended Complaint relies almost entirely on the disparity between the statistics reported by the defendants and the results of the Agency's own analysis.  As explained in previous Opinions, without additional support, this disparity is insufficient to allege fraudulent intent with the specificity required by Rules 8(a) and 9(b), Fed. R. Civ. P.  Merrill, 2012 WL 5451188, at *2.  Accordingly, the defendants' motion to dismiss is granted with respect to the plaintiff's fraud claims based on LTV and owner-occupancy reporting.

The defendants also raise several arguments that were not fully addressed by this Court's prior Opinions.  These arguments will be addressed in turn.

II.  LTV Falsity for Purchase-Money Mortgages

Defendants argue that the plaintiff's LTV-related allegations with regard to three of the securitizations at issue in this case are inadequate to allege falsity.  As explained in UBS I,

> For any given mortgage, the LTV ratio is determined by computing the balance of the loan as a percentage of the value of the property that secures it, often determined on the basis of an appraisal.  LTV ratio is

7

>a measure of credit risk.  The higher the ratio, the
>less equity the homeowner has in the property, and the
>more likely she is to default. . . .  Just as LTV
>ratio is a measure of the riskiness of an individual
>home loan, so too is it an indicator of the
>investment-worthiness of a security backed by the
>income from many such loans.  Each Prospectus
>Supplement that defendants signed in connection with
>these offerings included statistics regarding the
>distribution of LTV ratios across the underlying loan
>pool.

858 F. Supp. 2d at 324.

FHFA alleges that these group-level LTV data were false, in part because the value of the underlying properties were systematically overstated.  To support this allegation, the plaintiff relied on an automated valuation model to estimate the property value at the time of origination for each loan sampled.  Extrapolating from these estimates, the plaintiff alleges in the Amended Complaint that for each securitization at issue here, the Prospectus Supplement significantly understated the percentage of loans with an LTV ratio in excess of 80%.

Defendants object to the plaintiff's use of this method to allege falsity with respect to three securitizations backed only by purchase-money mortgages.  The Offering Documents for these securitizations explained in substance that, in calculating an individual loan's LTV ratio, the denominator would be "the lesser of the selling price of the Mortgaged Property and its appraised value determined in an appraisal obtained by the originator at origination of such Mortgage Loan."  Defendants

8

assume that selling price was always used, apparently because a buyer would find it difficult to finance the purchase a home for more than its appraisal value.  From this they conclude that the Agency's automated appraisal data does not bear on the falsity of LTV statistics for purchase-money mortgages.

The plaintiff has plausibly asserted the falsity of the representations regarding LTV ratio, even in these three securitizations.  The defendants' argument addresses the merits of the claim and is better suited to trial.

III.  Underwriter Liability under Federal and D.C. Law

Finally, RBS argues that under the "statutory seller" standard that applies under federal and District of Columbia law, the allegations in the Amended Complaint are insufficient to state a claim with respect to the Certificates that RBS did not sell.  FHFA asserts claims against RBS pursuant to Section 12(a)(2) and its D.C. Blue Sky equivalent in connection with the GSEs' purchase of four Certificates.[5]  Only one of these Certificates was purchased directly from RBS; the others were purchased from Credit Suisse.

Under Section 12(a)(2) of the Securities Act, persons who are not in privity with the plaintiff may be liable if they

---

[5] Because the D.C. Securities Act imposes liability on terms substantially identical to those that apply to claims under Section 12(a)(2) of the federal Securities Act, see, e.g., Hite v. Leeds Weld Equity Partners, 429 F.Supp.2d 110, 114 (D.D.C. 2006), the following discussion focuses on the latter provision.

"successfully solicit[ed] the purchase, motivated at least in part by a desire to serve [their] own financial interests or those of the securities owner." Pinter v. Dahl, 486 U.S. 622, 647 (1988). FHFA alleges that RBS and the other underwriter defendants "actively participated in the solicitation of Fannie Mae and Freddie Mac's purchase of the Certificates, and did so in order to benefit themselves." As alleged, "[s]uch solicitation included assisting in preparing the Registration Statements, filing the Registration Statements, and/or assisting in marketing and selling the Certificates."

But the fact that a defendant assisted in preparing and filing a registration statement is not alone sufficient to impose solicitation liability under Section 12(a)(2). See Capri v. Murphy, 856 F.2d 473, 478-79 (2d Cir. 1988) ("While there is no doubt that [defendant] played a major role in setting up the [deal], that is not sufficient to cast [it] as a seller. Instead, plaintiffs must show that [defendant] actually solicited their investment . . . ."). And although this Court has held that allegations that a defendant engaged in marketing efforts, such as participation in "road show" meetings, are sufficient to give a defendant fair notice of the basis for the plaintiff's claim that the defendant solicited the plaintiff's purchase, In re WorldCom, Inc. Secs. Litig., 294 F. Supp. 2d 392, 423 (S.D.N.Y. 2003), the plaintiff defines solicitation so

10

broadly here that it may include nothing more than assisting the issuer in the preparation of the Registration Statements.

The plaintiff's opposition brief suggests that RBS's status as a co-lead underwriter for the Credit Suisse-sold Certificates should be enough to plead actual solicitation.  But, in contradistinction to Section 11, liability under Section 12 turns not on a defendant's position within the constellation of offering participants but rather on her precise conduct with regard to the particular offering.

> Section 11(a) explicitly enumerates the various categories of persons involved in the registration process who are subject to suit under that section, including many who are participants in the activities leading up to the sale.  There are no similar provisions in § 12, and therefore we may conclude that Congress did not intend such persons to be defendants in § 12 actions.

Pinter, 486 U.S. at 650 n.26.

Moreover, although the SEC has recently promulgated a rule construing the role of an issuer to be inherently one of solicitation for the purposes of Section 12, see SEC Rule 159A, 17 C.F.R. 230.159A, the Commission has made no similar pronouncement with respect to lead or co-lead underwriters. Indeed, the Rule specifically provides that its terms "shall not affect in any respect the determination of whether any person other than an issuer is a 'seller'"  Id.  Given the failure of the Amended Complaint to allege that RBS "actually solicited [the GSEs'] investment" with regard to the Certificates they

11

purchased from Credit Suisse, the plaintiff's Section 12(a)(2) and D.C. Blue Sky claims against RBS in connection with the SAST 2006-1 and SAST 2006-2 Securitizations are dismissed.

CONCLUSION

The defendants' July 13 motions to dismiss are granted with respect to:

- Plaintiff's claims of owner-occupancy and LTV-ratio fraud;
- Plaintiff's Virginia Securities Act claims for Certificates purchased before September 6, 2006;
- Plaintiff's Section 12(a)(2) and D.C. Blue Sky claims against RBS in connection with Certificates purchased from other parties.

The motions to dismiss are denied in all other respects.

SO ORDERED:

Dated:   New York, New York
         November 19, 2012

_____
DENISE COTE
United States District Judge